UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                  **DECISION AND ORDER**
                                                      17-CR-116S

KENNETH CASSIDY,

                      Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Kenneth Cassidy's Motion for Release or Sentence Reduction under the federal compassionate-release statute (Docket No. 55), which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). Because Cassidy has failed to satisfy the mandatory exhaustion provisions of the statute, his motion is denied without prejudice.

## II. BACKGROUND

On January 8, 2018, Cassidy waived indictment and pleaded guilty to a 2-count, superseding information charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and willful failure to file an income tax return, in violation of 26 U.S.C. § 7203. (Docket Nos. 23-26.) These charges stemmed from Cassidy's participation in a conspiracy to defraud Lowe's Companies, Inc., out of millions of dollars through the creation and use of 173 false and fictitious "Lowe's Accounts Receivable" accounts and his failure to report his income from this criminal activity on his federal income tax returns from 2012 to 2015.

On December 18, 2018, this Court sentenced Cassidy to 60 months' imprisonment on Count 1, and 12 months' imprisonment on Count 2, to run concurrently, which fell within the range of the parties' sentencing provision providing for the imposition of a sentence between 57 and 71 months pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure.  (Docket Nos. 25, 50, 52.)  Cassidy's sentence also included 3 years' supervised release on Count 1, and 1 year of supervised release on Count 2, to run concurrently, a $125 special assessment, no fine, and $2,649,169.17 in restitution.  (Docket Nos. 50, 52.)  Cassidy is presently serving his sentence at FCI Danbury, with a release date of March 31, 2021.  See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited April 23, 2020).

On April 10, 2020, Cassidy moved for release to home confinement or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A) on the ground that he is at heighted risk to develop COVID-19 given his asthma and cardiac conditions and the outbreak of the coronavirus at FCI Danbury.  (Docket Nos. 55, 58, 59.)  Cassidy first applied for the same relief from the Bureau of Prisons on April 4, 2020.[1]  (Docket No. 57-1, pp. 3-5.)  The government opposes Cassidy's motion.  (Docket No. 57.)

---

[1] Cassidy twice submitted requests for compassionate release to the Bureau of Prisons.  He submitted his first request on April 4, 2020, by way of an "Inmate Request to Staff" form addressed to his case manager and through a contemporaneous email to the warden.  (See Docket No. 57-1, pp. 3-5.)  He submitted his second request on April 15, 2020, by way of another "Inmate Request to Staff" form addressed to his case manager.  (See Docket No. 57-1, p. 2.)  While the government represents that Cassidy never sent his email to the warden and never submitted his first request to his case manager, it has submitted no affidavits in that regard and, in fact, it readily obtained and submitted copies of these documents that were reportedly never received.  Accordingly, in the absence of evidence to the contrary, this Court finds that Cassidy first requested compassionate release from the Bureau of Prisons on April 4, 2020.

### III. DISCUSSION[2]

**A.     Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020).  One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i), which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute.  See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).  A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory

---

[2] The discussion below builds on this Court's previous decision in United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020).

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020).  If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)).  The exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all administrative appeal rights with respect to that denial,[4] or (2) that the warden of the facility took no action on his or her request for the filing of a compassionate-release motion

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a).  Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

4

within 30 days of receiving it.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional

5

>facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described." Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g), and (3) the reduction is consistent with the U.S.S.G. § 1B1.13 policy statement. See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

**B.   Cassidy's Motion for Compassionate Release**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. Conceding that he has not met this requirement, Cassidy argues that this Court can and should excuse this failure given the extraordinary pandemic presently engulfing the nation. In opposition, the government argues that the exhaustion requirement is mandatory and must be enforced, even in the face of an extraordinary crisis. Mindful that courts have recently come down on both sides of this issue, this Court's examination of § 3582 (c)(1)(A) once again leads it to conclude that the exhaustion requirement is mandatory and must be enforced. See, e.g., United States v.

6

Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020) (Skretny, J.) (finding that § 3582 (c)(1)(A)'s exhaustion requirement is mandatory).

Statutory interpretation begins with examination of the statutory text, which is read with the understanding that the ordinary meaning of the language accurately expresses the legislative purpose. See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). Plain and unambiguous statutory language is enforced according to its terms, without resort to legislative history. See Hardt, 560 U.S. at 251 (citing Carcieri v. Salazar, 555 U.S. 379, 387, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009) and Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009)); BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); Novak v. Kasaks, 216 F.3d 300, 310 (2d Cir. 2000) ("Only if the text of the statute is not unambiguous do we turn for guidance to legislative history and the purposes of the statute.").

As relevant here, 18 U.S.C. § 3582 (c)(1)(A) provides:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such

7

a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The statute speaks in unmistakably plain and unambiguous language. See United States v. Ogarro, No. 18-cr-373-9 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) (Sullivan, Circuit Judge) (finding the language in § 3582 (c)(1)(A) to be "clear as day"); United States v. Woodson, 18-cr-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020) (finding the language in § 3582 (c)(1)(A) "free from ambiguity"). Barring a motion by the Director of the Bureau of Prisons, a court is authorized to modify a previously-imposed term of imprisonment for extraordinary and compelling reasons only if the defendant first presents his or her request for a sentence reduction to the Bureau of Prisons and either (1) the Bureau of Prisons denies the request and the defendant exhausts all administrative rights with respect to that denial, or (2) the warden of the facility takes no action on the request within 30 days of receiving it. See 18 U.S.C. § 3582 (c)(1)(A) (emphasis added).

This plain exhaustion mandate contains no built-in textual exceptions, other than the 30-day lapse provision. Cf. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d (2016) (finding a textual exception in the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e (a), which requires exhaustion of only "such administrative remedies *as are available*") (emphasis added). That is, § 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously-imposed sentence on satisfaction of its exhaustion provisions. See United States v. Vence-Small, No. 3:18-cr-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020) ("Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first

applying to the prison warden to file a motion on the defendant's behalf."); United States v. Fana, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory preconditions are satisfied.").

As a *statutory* exhaustion provision—one imposed by Congress—§ 3582 (c)(1)(A)'s exhaustion requirement is not subject to judge-made exceptions, as *judge-made* exhaustion requirements may be. See Ross, 136 S. Ct. at 1856-57; see also Vence-Small, 2020 WL 1921590, at *4 (explaining that Ross "made clear that judges are not at liberty to add judge-made exceptions to exhaustion requirements that are made mandatory by statute"). As the Supreme Court explains:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements.

Id. (citations omitted); see also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Of 'paramount importance' to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required." (citations omitted)).

Consequently, because Congress did not write any exceptions into § 3582 (c)(1)(A)'s exhaustion provisions (other than the 30-day lapse provision), those plain and unambiguous provisions must be strictly enforced and are not subject to judge-made exceptions. See Theodoropoulos, 358 F.3d at 172 ("As a general rule, courts are required

9

to strictly enforce statutory exhaustion requirements."); Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."); United States v. DeMaria, 17 Cr. 569 (ER), 2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020) ("The plain language of [§ 3582 (c)(1)(A)] does not give this Court any flexibility in allowing waiver.").

Numerous district courts in this circuit agree. See, e.g., Ogarro, 2020 WL 1876300, at *3 ("Because the statutory language is unambiguous and mandatory, it must be "strictly enforce[d]."); United States v. Engleson, No. 13-cr-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (Sullivan, Circuit Judge) (finding that a court cannot grant relief under § 3582 (c)(1)(A) where the statutory exhaustion requirement is not met); United States v. Gonzalez, 3:18-CR-00315 (KAD), 2020 WL 1940666, at *3 (D. Conn. Apr. 22, 2020) ("the statute's requirements are unambiguous and mandatory"); Vence-Small, 2020 WL 1921590, at *4 (holding that "[t]he Supreme Court's decision in Ross v. Blake dictates the outcome here because section 3582 (c)(1)(A) creates a statutory exhaustion requirement"); United States v. Smith, No. 3:16-cr-48 (MPS); 2020 WL 1903160, at *2-3 (D. Conn. Apr. 17, 2020) ("I view the exhaustion requirement in § 3582 (c) as mandatory and not subject to exceptions for futility or other judge-made exceptions."); DeMaria, 2020 WL 1888910, at *3 (finding § 3582 (c)(1)(A)'s exhaustion requirement to be mandatory); United States v. Napout, 15-CR-252 (PKC), 2020 WL 1872455, at *1 (E.D.N.Y. Apr. 14, 2020) (finding exhaustion required); United States v. Rensing, 16 CR 442 (VM), 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020) (finding exhaustion required); Fana, 2020 WL 1816193, at *5 ("Congress's intent is best discerned from the text of the statute that it passed, and [§ 3582 (c)(1)(A)] prohibits the Court from

acting except upon satisfaction of the [exhaustion] conditions laid out in it."); United States v. Gentille, 19 Cr. 590 (KPF), 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) (citing cases and finding that "courts lack the authority to waive the administrative exhaustion requirement stated in § 3582 (c)(1)(A)"); United States v. Roberts, 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) ("Under Ross, the Court must abide by Congress's choice, given Section 3582 (c)'s clear command that the Court "may not" grant compassionate release except under the conditions Congress prescribed."); United States v. Woodson, 18-cr-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020) (finding § 3582 (c)(1)(A) "free from ambiguity" and rejecting argument that the exhaustion requirement can be dispensed with in light of the COVID-19 crisis); Monzon, 2020 WL 550220, at *2 (requiring exhaustion).

The Third Circuit also agrees, having recently found that "strict compliance with § 3582 (c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" during the existing COVID-19 crisis. United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (describing the failure to exhaust as a "glaring roadblock foreclosing compassionate release at this point").

To be sure, reasonable minds may differ, and this Court is keenly aware that other district judges have reached the opposite conclusion and found § 3582 (c)(1)(A)'s exhaustion requirement excusable.[5]  Some have done so by finding § 3582 (c)(1)(A) to be a non-mandatory claims-processing provision, rather than a jurisdictional dictate. See, e.g., United States v. Bess, 16-cr-156, 2020 WL 1940809, at *2-7 (W.D.N.Y. Apr. 22,

---

[5] Indeed, one court saw fit to reverse itself over the course of one week in light of the developing law in this area.  Compare United States v. Gross, No. 15-cr-769 (AJN), 2020 WL 1862251 (S.D.N.Y. Apr. 14, 2020) (finding exhaustion mandatory) with Scparta, 2020 WL 1910481 (finding exhaustion excusable).

11

2020); United States v. Russo, 16-cr-441 (LJL), 2020 WL 1862294, at *4-7 (S.D.N.Y. Apr. 14, 2020); United States v. Bin Wen, 6:17-CR-06173 EAW, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).  Others have done so by applying judge-made exhaustion principles in reliance on Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019), where a panel of the Second Circuit stated in dicta that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute."  See e.g., United States v. Sanchez, No. 18-cr-00140-VLB-11, 2020 WL 1933815, at *4 (D. Conn. Apr. 22, 2020); United States v. Sawicz, 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, Crim. Case No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *3-4 (D. Conn. Apr. 8, 2020); United States v. Colvin, Criminal No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); Perez, 2020 WL 1546422, at *2-*3.

These courts are understandably anxious to reach the merits of defendants' motions, just as this Court is.  But the reasoning employed to achieve such expediency, in this Court's view, runs counter to the plain, unambiguous mandatory exhaustion requirement imposed in § 3582 (c)(1)(A).  For example, whether § 3582 (c)(1)(A) is construed as a claims-processing or jurisdictional provision, it nonetheless remains an express statutory directive requiring exhaustion that must be enforced.[6]  See McCarthy, 503 U.S. at 144 ("Where Congress specifically mandates, exhaustion is required") (citations omitted); Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp., 489 U.S. 561, 579, 109 S. Ct. 1361, 103 L. Ed. 2d 602 (1989) ("Our past cases have recognized

---

[6] For this reason, it is unnecessary for this Court to wade into the jurisdictional-versus-claims-processing thicket.

12

that exhaustion of administrative remedies is required where Congress imposed an exhaustion requirement by statute."); Bastek, 145 F.3d at 94 ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, '[a court is] not free to rewrite the statutory text.'") (quoting McNeil v. United States, 508 U.S. 106, 111, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993)); Vence-Small, 2020 WL 1921590, at *4 ("Section 3582 (c)(1)(A) doubtlessly creates a type of mandatory statutory exhaustion requirement."); Ogarro, 2020 WL 1876300, at *3 ("But regardless of whether the statute is jurisdictional or a claim-processing rule, its exhaustion requirements are clearly mandatory."); Monzon, 2020 WL 550220, at *2 ("It is unnecessary to resolve here whether § 3582 (c) creates a jurisdictional bar to the modification of Monzon's sentence or simply sets forth a statutory exhaustion requirement.  If it imposes the latter, it must be "strictly enforce[d]."); cf. Bess, 2020 WL 1940809, at *6 (acknowledging that "the text of section 3582 (c)(1)(A) unambiguously mandates exhaustion," but proceeding to find the provision subject to equitable exceptions).

And reliance on Washington v. Barr is misplaced because Barr did not involve a statutorily-mandated exhaustion provision.  925 F.3d at 118.  Rather, the panel's dicta came in the context of it examining a *judge-made* exhaustion provision and in exploring exceptions to *judge-made* exhaustion provisions set out by the Supreme Court in McCarthy.  The panel's statement was therefore not necessary to its holding and appears to be in conflict with the law governing statutorily-mandated exhaustion provisions set forth above.  This Court therefore considers Barr neither controlling nor instructive.  See, e.g., Gonzalez, 2020 WL 1940666, at *3 (distinguishing Barr and finding that "it did not conclude that courts can waive exhaustion requirements that are explicitly mandated by

13

statute"); Vence-Small, 2020 WL 1921590, at *4 (explaining why Barr is inapplicable); DeMaria, 2020 WL 1888910, at *3 (same); Ogarro, 2020 WL 1876300, at *4 (characterizing the dicta in Barr as "speak[ing] only to exhaustion requirements implied by a statute's structure and purpose, not to requirements that are expressly provided in the statute itself"); Woodson, 2020 WL 1673253, at *3 (distinguishing Barr).  As the Supreme Court recently reiterated in Ross, the distinction between statutorily-required and judge-made exhaustion provisions is crucial, for statutorily-required exhaustion provisions foreclose judicial discretion to excuse them.  See Ross, 136 S. Ct. at 1856-57; see also Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir. 2003) (finding the distinction "pivotal . . . because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions").

Consequently, this court continues, see Schultz, 2020 WL 1872352, at *5, to fall with those courts finding that the statutorily-mandated exhaustion requirements in § 3582 (c)(1)(A) cannot be excused and instead "must be strictly enforced."  Monzon, 2020 WL 550220, at *2 (citing Theodoropoulos, 358 F.3d at 172).  The plain, unambiguous language of the statute compels this result.  Indeed, Congress already accounted for a common exception to exhaustion—futility—by implementing the 30-day lapse provision, thereby affording inmates access to judicial review if the Bureau of Prisons fails to act on motions to reduce sentence within 30 days of receiving them.  See Roberts, 2020 WL 1700032, at *2 (finding the 30-day lapse provision to be "a limited futility-like exception").  Nothing in the statute suggests that Congress intended any further judge-made exceptions to supplement this scheme.  See Vence-Small, 2020 WL 1921590, at *4

14

(finding that "[t]he 30-day waiting time rule functions as an exception to a plenary exhaustion requirement, and the statute does not invite judges to craft additional exceptions."); Fana, 2020 WL 1816193, at *5 ("Congress' intent is best discerned from the text of the statute that it passed, and [§ 3582 (c)(1)(A)] prohibits the Court from acting except upon satisfaction of the conditions laid out in it.").

It is thus plain that Congress intended the Bureau of Prisons to receive all requests for sentence modification and to have at least 30 days to act on them before those requests are presented to the federal courts.[7]  See Ogarro, 2020 WL 1876300, at *2.  As draconian as this result may seem in the midst of the COVID-19 pandemic, this is the statutory scheme that Congress has developed for modification of imposed terms of imprisonment, even in times of national crisis.[8]  See Vence-Small, 2020 WL 1921590, at *5 (noting that "Congress did not create an emergency exception to the exhaustion requirement").  And as the DeMaria court put it, district courts "can only respond to this crisis using tools given to it by Congress."  2020 WL 1888910, at *1.  In the absence of

---

[7] As the Woodson court noted, there may be good reason for this scheme:

> Giving the BOP the opportunity to speak first may obviate the need for judicial action where a defendant's application is granted.  If the BOP denies a defendant's application, the BOP's decision may inform the Court of why the agency does not consider the relief warranted.  The present national health emergency makes thoughtful and considered input from the BOP all the more valuable in avoiding unwarranted disparities among convicted defendants.

2020 WL 1673253, at *3; see also Ogarro, 2020 WL 1876300, at *2 (explaining the purpose of requiring exhaustion).

[8] This Court notes that Congress passed legislation in specific response to the COVID-19 outbreak, but did not modify the § 3582 (c)(1)(A) statutory scheme, which it surely could have elected to do.  See Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136 (2020).  Instead, Congress provided additional authority to the Attorney General and Director of the Bureau of Prisons, thereby evidencing its considered judgment that the COVID-19 pandemic "require[s] a centralized response by a specialized agency in the executive branch, not piecemeal consideration by courts."  Ogarro, 2020 WL 1876300, at *5.

15

statutory exceptions to § 3582 (c)(1)(A)'s exhaustion requirements, this Court finds that it is bound to strictly enforce them.  See Theodoropoulos, 358 F.3d at 172; Vence-Small, 2020 WL 1921590, at *6 ("If I were now to recognize an emergency exception . . . I would be simply re-writing the law to create an exception that Congress did not enact and did not plainly intend."); Ogarro, 2020 WL 1876300, at *5 ("[T]here is nothing in the First Step Act or its history to suggest that courts may modulate the exhaustion waiting period when they see fit."); Roberts, 2020 WL 1700032, at *2 ("Given Congress's decision to mandate exhaustion and to specify a single alternative, the Court is not free to infer a general "unwritten 'special circumstances' exception." (quoting Ross, 136 S. Ct. at 1856, 1862)). Accordingly, because Cassidy failed to exhaust his administrative rights as statutorily required, his motion must be denied without prejudice.[9]

## IV. CONCLUSION

Because Cassidy failed to exhaust his administrative rights as statutorily required under 18 U.S.C. § 3592 (c)(1)(A), his motion for release or reduction of sentence will be denied without prejudice.

---

[9] Given the fluidity of this unprecedented situation and the desire to avoid stale motions, this Court finds it procedurally preferable to deny Cassidy's motion without prejudice to the filing of an updated motion once exhaustion is complete, rather than to hold the present motion, filed almost two weeks ago, in abeyance.

## V. ORDER

IT HEREBY IS ORDERED, that Cassidy's Motion for Release or Sentence Reduction (Docket No. 55) is DENIED without prejudice.

SO ORDERED.


Dated:      April 24, 2020
            Buffalo, New York

                                              s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge