UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
17-CR-116S

KENNETH CASSIDY,

Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Kenneth Cassidy's Motion for Sentence Reduction under the federal compassionate-release statute, which the government opposes.  See 18 U.S.C. § 3582 (c)(1)(A).  For the reasons discussed below, Cassidy's motion is granted, and he is ordered immediately released from FCI Danbury.

## II. BACKGROUND

On January 8, 2018, Cassidy waived indictment and pleaded guilty to a 2-count, superseding information charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and willful failure to file an income tax return, in violation of 26 U.S.C. § 7203.  (Docket Nos. 23-26.)  These charges stemmed from Cassidy's participation in a conspiracy to defraud Lowe's Companies, Inc., out of millions of dollars through the creation and use of 173 false and fictitious "Lowe's Accounts Receivable" accounts and his failure to report his income from this criminal activity on his federal income tax returns from 2012 to 2015.

On December 18, 2018, this Court sentenced Cassidy to 60 months' imprisonment on Count 1, and 12 months' imprisonment on Count 2, to run concurrently, which fell within the sentencing provision in the plea agreement that called for imposition of a sentence between 57 and 71 months' imprisonment pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure.  (Docket Nos. 25, 50, 52.)   It also sentenced Cassidy to 3 years' supervised release on Count 1, and 1 year of supervised release on Count 2, to run concurrently, a $125 special assessment, no fine, and $2,649,169.17 in restitution.  (Docket Nos. 50, 52.)  This Court further recommended that, if permissible, the Bureau of Prisons designate Cassidy to serve the final year of his sentence in a community placement setting.   (Docket No. 50.)   Cassidy is presently serving his sentence at FCI Danbury, with a release date of March 31, 2021,[1] and a release to community confinement date in October 2020.  (See Affirmation of Jeffrey T. Bagley, Esq. ("Bagley Aff."), Docket No. 62, ¶ 9.)

On April 10, 2020, Cassidy moved for release to home confinement or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A) on the ground that he is at heighted risk to develop COVID-19 given his pulmonary and cardiac conditions and the outbreak of the coronavirus at FCI Danbury.  (Docket Nos. 55, 58, 59, 60.)  The government opposed Cassidy's motion.  (Docket No. 57.)  On April 24, 2020, this Court denied Cassidy's motion without prejudice for failure to exhaust his administrative rights as required under § 3582 (c)(1)(A).  See United States v. Cassidy, 17-CR-116S, 2020 WL 1969303 (W.D.N.Y. Apr. 24, 2020).[2]

---

[1] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited May 13, 2020).

[2] This decision is filed at Docket No. 61.

Upon the completion of exhaustion, Cassidy filed the instant motion to reduce sentence on May 4, 2020.  (Docket Nos. 62, 65, 66, 68, 71.)  The government again opposes the motion.  (Docket Nos. 64, 67.)  At defendant's request, this Court has considered the previous submissions (Docket Nos. 55, 57-60) along with the current ones in resolving the present motion.

### III. DISCUSSION

**A.      Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020).  One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing

---

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); Cassidy, 2020 WL 1969303, at *3-8 (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [4] or (2) 30 days lapse from

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's

the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease

---

general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[5] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision.  It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

    (1) (A) extraordinary and compelling reasons warrant the

---

[5] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited May 13, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction.  See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

reduction; or

    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and

(3) the reduction is consistent with this policy statement.

<u>See</u> U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  <u>See</u> <u>Gileno</u>, 2020 WL 1307108, at *2.

**B.    Cassidy's Motion for Sentence Reduction**

Cassidy has approximately 10 months left to serve on his 60-month sentence and just five months left to serve until he is due to be released to community confinement. (<u>See</u> Bagley Aff., ¶ 9.)  He is 54 years old and suffers from numerous physical ailments that make him highly susceptible to COVID-19.  He has a history of pulmonary and cardiac issues and has sustained multiple other injuries over the course of his lifetime. (Presentence Report, Docket No. 44, ¶ 95.)  Based on these circumstances, and this Court's recommendation at sentencing that he be permitted to serve his final year of confinement in community placement, Cassidy requests that this Court reduce his sentence to time served or permit him to serve the remainder of his sentence in home confinement.  If granted, Cassidy plans to live with his brother in Brooklyn, New York. (Bagley Aff., ¶ 6.)  The government asks that this Court deny Cassidy's motion on the basis that there exist no extraordinary or compelling reasons warranting a sentence

reduction.

**1. Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court finds that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Section 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously imposed sentence on satisfaction of its exhaustion provisions.  See United States v. Vence-Small, No. 3:18-cr-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020) ("Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first applying to the prison warden to file a motion on the defendant's behalf."); United States v. Fana, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory

preconditions are satisfied."). As a *statutory* exhaustion provision—one imposed by Congress—§ 3582 (c)(1)(A)'s exhaustion requirement is not subject to judge-made exceptions, as *judge-made* exhaustion requirements may be. See Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856-57, 195 L. Ed. 2d 117 (2016); see also Vence-Small, 2020 WL 1921590, at *4 (explaining that Ross "made clear that judges are not at liberty to add judge-made exceptions to exhaustion requirements that are made mandatory by statute"). As the Ross court explained:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements.

Id. (citations omitted); see also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Of 'paramount importance' to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required." (citations omitted)).

Consequently, because Congress did not write any exceptions into § 3582 (c)(1)(A)'s exhaustion provisions (other than the 30-day lapse provision), those plain and unambiguous provisions must be strictly enforced and are not subject to judge-made exceptions. See Theodoropoulos, 358 F.3d at 172 ("As a general rule, courts are required to strictly enforce statutory exhaustion requirements."); Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."); United States v. DeMaria, 17 Cr. 569 (ER),

2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020) ("The plain language of [§ 3582 (c)(1)(A)] does not give this Court any flexibility in allowing waiver.").

Here, this Court previously determined that Cassidy submitted his request for a sentence modification to the warden of Danbury on April 4, 2020.  See Cassidy, 2020 WL 1969303, at *1 n.1.  Thirty days having lapsed since that date, this Court finds that Cassidy has satisfied the statutory exhaustion requirement, and the government does not argue otherwise.

### 2. Extraordinary and Compelling Reasons for Sentence Reduction

Cassidy is a 54-year-old, morbidly obese man who appears never to have been in anything other than very poor health.  Before he was 15 years old, Cassidy was diagnosed with asthma and migraines/traumatic facial syndrome, and had experienced an appendectomy and chest pains.  (Presentence Report, ¶ 95.)  He was diagnosed with angina at age 26 and ischemic heart disease at age 28.  (Id.)  He broke his neck when he was 28 years old, had spinal-fusion surgery when he was 29, and then suffered three successive heart attacks at ages 32, 33, and 34.  (Id.)  At age 34, Cassidy was diagnosed with unstable angina, stomach ulcers, Barrett's Esophagus disorder due to gastroesophageal reflux disease ("GERD"), asthma, diverticulitis, kidney stones, and hypertension.  (Id.)  He has also been diagnosed with Syndrome X angina and Cushing syndrome, an endocrine system disorder.  (Id.)

At sentencing in December 2018, Cassidy's active medical problems were identified as abdominal pain, allergic rhinitis, asthma, back pain, Buffalo hump, coronary artery disease, constipation, cough detrusor instability, diverticulosis, edentulous, GERD, health maintenance, hyperglycemia, hypertension, knee injury kyphosis, morbid obesity,

myocardial infarct, onychomycosis, and Prinzmetal's angina.  (Id. ¶ 97.)  The probation department confirmed Cassidy's litany of medical conditions at sentencing, and there is no indication that any of them have improved.  (Id. ¶ 94.)

But as serious as they may be, Cassidy's conditions do not constitute extraordinary and compelling reasons for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13.  None of his conditions is a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor is any a serious condition, impairment, or age-related deterioration that substantially diminishes his ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Cassidy argues that his medical conditions make him highly susceptible to contracting and dying from COVID-19.  See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

There can be no dispute that Cassidy's pulmonary and cardiac conditions make him particularly susceptible to COVID-19.  COVID-19, of course, is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  The Centers for Disease Control

and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[6]  Those medical conditions include chronic lung disease, moderate to severe asthma, serious heart conditions, and severe obesity, each of which Cassidy suffers from.[7] Cassidy therefore falls into the high-risk category.

The Bureau of Prisons, however, has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19.  Preparations began in January 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[8]  This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies.  Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours.  These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 13, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 13, 2020).

[8] See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited May 13, 2020).

While indications are that adherence to this plan has generally served Bureau of Prisons facilities fairly well, there have been difficult-to-control "hotspots." FCI Danbury is one of them. Little more than one month ago, Attorney General Barr found that "significant levels of infection" at FCI Danbury were materially affecting its operations.[9] He therefore ordered the Director of the Bureau of Prisons "to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of [Danbury]."[10] Federal district courts have also acknowledged the difficult conditions at FCI Danbury. See, e.g., United States v. Valencia, 15 Cr. 163 (AT), 2020 WL 2319323, at *7 (S.D.N.Y. May 11, 2020) (describing FCI Danbury as a "hotbed of COVID-19"); United States v. Park, No. 16-cr-473 (RA), 2020 WL 1970603, at *4 (S.D.N.Y. Apr. 24, 2020) (describing "worsening" conditions at FCI Danbury). In addition, the conditions at FCI Danbury are presently being litigated in a class action suit brought by four inmates, including Cassidy.[11] See Martinez-Brooks, et al. v. D. Easter, et al., 3:20-cv-569-MPS, Docket No. 1 (D. Conn. Apr. 27, 2020).

As of May 13, 2020, the Bureau of Prisons reports that 27 inmates at FCI Danbury are positive for COVID-19, 7 staff are positive, and one inmate has died.[12] Overall, there

---

[9] See https://www.justice.gov/file/1266661/download (last visited May 13, 2020).

[10] See https://www.justice.gov/file/1266661/download (last visited May 13, 2020).

[11] Just as this Court was finalizing its decision, Cassidy filed the supplemental affirmation of Jeffrey T. Bagley, Esq., advising that the Honorable Michael P. Shay, United States District Judge, granted the plaintiffs' request for a temporary restraining order to address conditions at FCI Danbury. (Docket No. 71.) Judge Shay found that the plaintiffs, including Cassidy, are likely to prevail on their claim that the warden of FCI Danbury has exhibited deliberate indifference to their medical needs during the COVID-19 outbreak in violation of their Eighth Amendment rights. (Docket No. 71-1.) He therefore ordered the warden to accelerate and refine her evaluation of inmates with COVID-19 risk factors for home confinement and other forms of release with a particular focus on inmate and public safety. (Id.) This ruling fully supports this Court's decision herein.

[12] See https://www.bop.gov/coronavirus (last visited May 13, 2020).

have been 76 inmate and 57 staff cases at FCI Danbury.[13]  In his declaration dated May 10, 2020, Cassidy attests that he is housed near inmates who are exhibiting COVID-19 symptoms and some who have tested positive for the virus.  (Declaration of Kenneth Cassidy, Docket No. 68-1, ¶¶ 2, 3, 8, 12, 13.)  He also maintains that he is experiencing symptoms himself:  headache; shortness of breath; aches; tightness in chest.  (Id. ¶ 15.) He further attests that he is experiencing numbness in the left side of his face and weakness in his left arm and was told by a physician's assistant on April 29, 2020, that he needed an emergency cardiac catheterization and colonoscopy, which to date have not been scheduled.  (Id. ¶ 18.)

Given the above, this Court finds that Cassidy quite easily falls into the high-risk category for COVID-19.  And even among that subset, Cassidy seems at unique risk given the number and nature of his medical maladies and his history of pneumonia and heart attacks.  Some courts have found this enough to warrant a sentence reduction. See, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases finding that compassionate release is justified for individuals with risk factors that make them particularly susceptible to COVID-19).

But this Court does not adhere to that view.  Rather, this Court has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.  See Korn, 2020 WL 1808213, at *6; see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2,

---

[13] See https://www.bop.gov/coronavirus (last visited May 13, 2020).

2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

Here, however, Cassidy demonstrates more than just a general possibility that he could contract COVID-19.  He demonstrates past and present high-risk factors that place him among the most susceptible to the potentially lethal COVID-19 disease: Cassidy has had three heart attacks and an astounding 21 bouts of pneumonia.  (See PSR, ¶ 95).  He demonstrates an ongoing cardiac condition that requires treatment.  He demonstrates

incarceration in a proven "hotbed" facility that has numerous positive cases, including inmates with whom Cassidy has shared quarters.  And most significantly for purposes of the present motion, Cassidy demonstrates the compelling circumstance that his continued confinement is inconsistent with one of the recommendations made at sentencing.

When this Court sentenced Cassidy in December 2018, it recommended to the Bureau of Prisons (at Cassidy's request) that, if available and if deemed eligible and deserving, Cassidy be permitted to serve the final year of his sentence in a community confinement placement, such as a half-way house.[14]  (Sentencing Transcript, Docket No. 70, p. 33.)  It did so principally because of Cassidy's poor health, but it also imparted to Cassidy that he would have to be the one to earn such consideration if an early-reentry program became available.  (Id. p. 34.)  Inherent in that recommendation was the finding that Cassidy's service of the last year of his sentence in community confinement, if authorized, would be consistent with the goals of sentencing.  That sentiment still holds, even though Cassidy's opportunity for release from imprisonment comes by way of extraordinary and compelling circumstances under § 3582 (c)(1)(A) rather than a Bureau of Prisons program.

Accordingly, considering all of the above factors in combination, this Court finds that Cassidy has demonstrated extraordinary and compelling reasons warranting a sentence reduction.

---

[14] The government took no position on Cassidy's request.  (Sentencing Transcript, Docket No. 70, p. 33.)

### 3.   Consideration of the § 3553 (a) Factors

Having found extraordinary and compelling reasons for a sentence reduction, this Court further finds that those reasons are not outweighed by consideration of the § 3553 (a) factors and that a sentence reduction does not undermine the original sentence.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7.  The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

Let there be no doubt that Cassidy engaged in serious fraudulent activity and caused significant financial loss to Lowes.  His crimes, however, were non-violent crimes, and Cassidy has no incidents of violence in his background.  He is an ill man with severely compromised health who is extremely susceptible to a virus like COVID-19.  He has 10 months left to serve of a 60-month sentence and is just five months away from being released to community confinement.  Consequently, even with a modest reduction, this Court finds that Cassidy's sentence remains significant and continues to serve the sentencing goals identified above.

### 4.   Consistency of a Reduction with U.S.S.G. § 1B1.13

Lastly, a sentence reduction must be consistent with U.S.S.G. § 1B1.13, which having already found extraordinary and compelling circumstances, essentially means that this Court must determine whether Cassidy is a danger to the safety of any person or to

the community.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).  He is not.  There is no indication that Cassidy, a non-violent offender in ill health, poses a danger to any person or the community, and the government does not demonstrate otherwise.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that Cassidy has demonstrated extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A).  His motion will therefore be granted, and he will be ordered immediately released from FCI Danbury.

## V. ORDERS

IT HEREBY IS ORDERED, that Cassidy's Motion for Sentence Reduction (Docket No. 62) is GRANTED.

FURTHER, that Cassidy's sentence is reduced to time served under 18 U.S.C. § 3582 (c)(1)(A).

FURTHER, that the Bureau of Prisons is directed to immediately release Cassidy from FCI Danbury.

FURTHER, that Cassidy's term of supervised release will commence immediately upon his release from FCI Danbury, subject to the terms and condition set forth in the judgment (Docket No. 52), each of which Cassidy is ordered to abide by.

FURTHER, that Cassidy must contact the duty probation officer in the Eastern District of New York at 347-534-3400 within 24 hours of his release from FCI Danbury.

FURTHER, that Cassidy must reside in the Eastern District of New York at his brother's approved address in Brooklyn, New York, unless another address within the Eastern District of New York is approved by the United States Probation Office.

FURTHER, that following his release from FCI Danbury, Cassidy must travel directly to his brother's approved residence in Brooklyn, New York.

FURTHER, that upon arriving at his brother's approved residence in Brooklyn, New York, Cassidy must self-quarantine for no fewer than 14 days.

SO ORDERED.


Dated:      May 13, 2020
            Buffalo, New York

                                                    s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                              United States District Judge